UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

MERLIN LKENT                                                                                    PETITIONER
WILLIAMS,

V.                                                    CIVIL ACTION NO. 1:20-CV-286-LG-RPM

BURL CAIN,                                                                                      RESPONDENT

### REPORT AND RECOMMENDATION

#### I.  INTRODUCTION

On September 1, 2020, petitioner Merlin LKent Williams ("Williams") filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254 ("Section 2254"), seeking for his state court conviction to be set aside, his sentence to be vacated, and a new trial. Doc. [1]. On February 12, 2021, respondent Burl Cain ("respondent") filed the present motion to dismiss Williams' habeas petition on the grounds that it is time-barred under 28 U.S.C. § 2244(d). *See* Doc. [11].[1]

#### II.  Facts

The following facts are adduced from the petition and documents attached thereto as well as from the state court and appellate record.

On the morning of July 5, 2016, Eddwena Myles ("Myles") was resting in bed alongside her boyfriend of four years, petitioner Williams, in her roommate's, Freeda Henry ("Henry's"), house.

---

[1] The Court liberally construed Williams' "motion to dismiss" the respondent's similarly named motion, *see* Doc. [14], as a response in opposition, *Erickson v. Pardus*, 551 U.S. 89, 93–94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Similarly, the Court liberally construes Williams' "counter motion to dismiss" the respondent's reply brief and "motion to expel" the respondent's motion to dismiss as unauthorized sur-replies. Doc. [16]. The Court is under no obligation to consider these filings. *See*, *e.g.*, *Cannady v. Woodall*, No. 1:20–CV–130–HSO–RPM, 2020 WL 8515056, at *2 n.1 (S.D. Miss. Dec. 3, 2020), *report and recommendation adopted*, No. 1:20–CV–130–HSO–RPM, 2021 WL 215490 (S.D. Miss. Jan. 21, 2021). In its discretion, however, the Court has considered the petitioner's unauthorized sur-replies in deciding the present motion. *Ibid*

Doc. [13], Ex. 3 (Myles T. 107:18–108:26).[2] A little before 8:00 AM, Myles suddenly awoke, needing to use the bathroom, and she told Williams as much. *Id.*, Ex. 3 (Myles T. 109:1–16); (Henry T. 123:7–10). She made her way to the bedroom door, and, as she was turning the doorknob, Williams jumped off the bed and stabbed her in the chest with a knife. *Id.*, Ex. 3 (Myles T. 109:20–25). When Myles tried to open the door again, Williams repeatedly stabbed her in the arm, successfully thwarting her escape. *Id.*, Ex. 3 (Myles T. 110:1–14). Then, when Myles asked Williams why he was attacking her, Williams exclaimed that he needed to kill her to receive $1,000,000.00 and because he "love[d]" her. *Id.*, Ex. 3 (Myles T. 110:1–10, 111:16–26). After attempting to calm Williams down, Myles attempted to escape again—this time through the bedroom window. *Id.*, Ex. 3 (Myles T. 111:16–26). However, Williams prevented her from escaping once more by stabbing her in the side, knee, and back. *Ibid.* When Myles started to scream, Williams stabbed her in the neck. *Ibid.*

During the attack, Henry was also at home. Doc. [13], Ex. 3 (Myles T. 108:22–24); (Henry T. 120:23–26). At around 8:00 AM that morning, Henry heard screams emanating through the wall that separated her room from Myles' room. *Id.*, Ex. 3 (Henry T. 122:1–4, 123:7–10). Alarmed, Henry knocked on Myles' locked door, but then heard nothing from the room. *Id.*, Ex. 3 (Myles T. 113:15–25); (Henry T. 123:17–18, 21–24). Upon hearing the knock, Williams whispered to Myles that he was going to walk away and "nobody is going to mess with me." *Id.*, Ex. 3 (Myles T. 112:27–113:2). After Henry threatened to "bust in" the door, Williams, shirtless and still holding the knife, abruptly opened the bedroom door and fled from the house. *Id.*, Ex. 3 (Myles T. 113:1–2); (Henry T. 122:21–29). Upon entering the room, Henry saw Myles slumped over the side of the bed and covered in blood. *Id.*, Ex. 3 (Henry T. 122:21–123:17).

---

[2] Myles had been living with Henry for several months. *Id.*, Ex. 3 (Henry T. 120:19–28).

Henry promptly called for an ambulance. *Id.*, Ex. 3 (Henry T. 123:26–28). Myles then went out to the porch to wait for the ambulance and passed out shortly thereafter. *Id.*, Ex. 3 (Myles T. 113:10–29). Later that same day, Williams was arrested by the police—he was still covered in blood and had a knife wound on his left hand. Doc. [13], Ex. 3 (Birmingham T. 141:13–142:18). Despite suffering multiple life-threatening stab wounds, Myles ultimately survived the attack. *Id.*, Ex. 4 (Rimmer T. 157:7–158:26).[3]

Testifying in his own defense, Williams told a very different story. First, Williams denied assaulting Myles on July 5, 2016 and claimed that she "fabricated this whole story" about the stabbing because she held an unspecified "personal vendetta" against him. Doc. [13], Ex. 4 (Williams T. 168:3–11, 171:3–8). Nevertheless, Williams neither denied the existence of Myles' stab wounds, claiming someone else caused them, nor that it was his Tennessee identification card that was found in Myles' bedroom. *Id.*, Ex. 4 (Williams T. 171:9–172:2); Ex. 7, at 47–48. On cross-examination, Williams also denied punching a pregnant Myles in the face in the recent past, notwithstanding pleading guilty to that charge. *Id.*, Ex. 4 (Myles T. 116:5–24), (Williams T. 169:14–170:10).[4] Ultimately, Williams was convicted by a jury.

### III.   Procedural History

On November 21, 2016, Williams was indicted as "Merlin Kent Williams" on one count of aggravated assault, Miss. Code Ann. § 97–3–7(2)(a). Doc. [13], Ex. 1, at 16. On November 8, 2017, a jury found Williams guilty of aggravated assault and he was sentenced to twenty-years imprisonment with five years suspended. *Id.*, Ex. 1, at 144–48. His final judgment of conviction

---

[3] In the hospital, Myles identified Williams' photograph in a photo lineup as her attacker. Doc. [13], Ex. 3 (Myles T. 114:22–29). She identified him again, by name and physical appearance, at trial. *Id.*, Ex. 3 (Myles T. 115:6–22).
[4] He only conceded that his name, "Merlin Williams," was on a court record from that case. Doc. [13], Ex. 4 (Williams T. 169:14–170:10); [15], at 52–54.

was entered on November 14, 2017. Doc. [13], Ex. 1, at 148. Williams appealed to the Mississippi Court of Appeals. *Id.*, Ex. 2, at 22; Ex. 5, at 137. His appointed appellate counsel filed a *Lindsey* brief, *Lindsey v. State*, 939 So.2d 743 (Miss. 2005), concluding that Williams did not have any arguable grounds for appeal, *id.*, Ex. 6, at 1–9. After his appointed counsel was allowed to withdraw, Williams was authorized to and did file a *pro se* supplemental appellate brief. *Id.*, Ex. 2, at 25–28; Ex. 6, at 28–50; [13], Ex. 5, at 3–4. On April 16, 2019, the Mississippi Court of Appeals denied his appeal. *Williams v. State*, 281 So.3d 939 (Miss. Ct. App. 2019). Thereafter, Williams neither moved for a rehearing nor petitioned the Mississippi Supreme Court for a writ of *certiorari*. M.R.A.P. 17(b). Fourteen days later, on April 30, 2019, Williams' conviction became final. *Ibid.*

While his case was still pending on direct appeal, Williams filed several state-court applications for postconviction relief ("PCR applications"), which he labelled "petitions for a writ of habeas corpus."[5] Williams filed his first PCR application on February 15, 2018. Doc. [13], Ex. 5, at 58–61. On March 1, 2018, the state trial court dismissed the petition on the grounds that Williams' direct appeal was still pending before the Mississippi Court of Appeals. *Id.*, Ex. 9, at 44–45. Shortly thereafter, Williams filed two more PCR applications with the state trial court in quick succession, on March 5, 2018 and March 13, 2018. *Id.*, Ex. 10, at 26–29, 31–34. On May 4, 2018, the state trial court denied both petitions as premature. *Id.*, Ex. 10, at 35. On April 16, 2018, Williams filed his fourth PCR application. *Id.*, Ex. 10, at 36–40. On May 1, 2018, the state trial denied the PCR application as premature. *Id.*, Ex. 10, at 42. Thereafter, Williams filed his fifth PCR application on June 20, 2018. *Id.*, Ex. 10, at 49–52. On July 24, 2018, the state trial court once again denied his petition as premature. *Id.*, Ex. 10, at 54. On August 1, 2018, Williams filed

---

[5] In Mississippi, a prisoner can seek collateral relief through a "postconviction relief" process. To avoid confusion, the Court refers to Williams' state "habeas petitions" by their proper name. *See* Miss. Code Ann. § 99–39–1, *et seq.*

his sixth PCR application along with a related motion for an evidentiary hearing, *id.*, Ex. 10, at 56–65, both of which the state trial court denied as premature on September 10, 2018,[6] *id.*, Ex. 8, at 34. On November 2, 2018, Williams filed his seventh PCR application with the Mississippi Supreme Court. *Id.*, Ex. 12, 4–14. On January 9, 2019, the Court summarily denied his habeas petition without comment. *Id.*, Ex. 12, at 3. Finally, Williams filed his eighth PCR motion with the Mississippi Supreme Court on June 16, 2020, after his conviction became final on direct appeal. *Id.*, Ex. 11, at 4–33. On August 20, 2020, a quorum of the Court denied his PCR application on the merits. *Id.*, Ex. 11, at 3.

Williams also submitted three free-standing filings prior to the conclusion of his direct appeal. First, on September 4, 2018, Williams filed a "memorandum" with the state trial court. Doc. [12], Ex. 17. Construing the filing as a motion for records, the state trial court denied it as moot on October 9, 2018. *Id.*, Ex. 18. On January 22, 2019, Williams filed a document labelled "proposed corrections to the record" with the state trial court. *Id.*, Ex. 20. On February 26, 2019, the state trial court denied the motion on the grounds that his proposed corrections were "not well-taken." *Id.*, Ex. 21. Finally, on March 4, 2019, Williams filed a "motion for an indigent appeal bail bond," arguing that he should be entitled to postconviction bond for the period that his myriad state appeals were pending. *Id.*, Ex. 22, at 2. On April 3, 2019, the state trial court denied this motion. *Id.*, Ex. 23.

On September 1, 2020, Williams filed the present habeas petition.[7]

---

[6] Williams appealed the denial of his fifth PCR application. Doc. [13], Ex. 8, at 35–41. On January 28, 2020, the Mississippi Court of Appeals upheld the state trial court's decision. *Id.*, Ex. 9, at 6–10.

[7] Under the prisoner mailbox rule, "a *pro se* prisoner's federal habeas corpus petition is deemed filed when the prisoner delivers it to prison officials according to the proper prison procedures." *Starns v. Andrews*, 524 F.3d 612, 616 n.1 (5th Cir. 2008). Here, Williams signed his petition and delivered it to prison officials on September 1, 2020. Doc. [1]. Therefore, September 1, 2020 is deemed the date that he filed his petition. *Starns*, 524 F.3d at 616 n.1.

## IV. ANALYSIS

### A. Statute of Limitations

Since the present motion addresses the timeliness of Williams' federal habeas petition, 28 U.S.C. § 2244(d)(1) ("Section 2244(d)(1)") is applicable. 28 U.S.C. § 2244(d). In full, Section 2244(d) states:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.
>
> [28 U.S.C. § 2244(d).]

Under the statute, the one-year limitation period for filing a federal habeas petition *begins* to run "from the latest of several start dates." *Roberts v. Cockrell*, 319 F.3d 690, 692 (5th Cir. 2003). These start dates are found in 28 U.S.C. § 2244(d)(1)(A)–(D). *Ibid.* Section 2244(d)(1)(A) represents the "earliest" date that a petitioner's one-year limitation period begins to run. *Beck v. Thaler*, 398 F. App'x 65, 66 (5th Cir. 2010) (per curiam). As such, a Mississippi state prisoner's one-year limitation period begins to run upon entry of his final judgment of conviction *unless*

Section 2244(d)(1)(B), (C), or (D) applies. *See*, *e.g.*, *Green v. Banks*, No. 1:18–CV–180–HSO–LRA, 2019 WL 1167809, at *3 (S.D. Miss. Mar. 13, 2019).

Here, under Section 2244(d)(1)(B), Williams has not identified an impediment created by the state government that violated the Constitution or federal law which prevented him from filing a timely petition. 28 U.S.C. § 2244(d)(1)(B). Similarly, Williams has not shown a newly recognized constitutional right upon which his petition is based. 28 U.S.C. § 2244(d)(1)(C). Finally, there is no indication that his claims could not have been discovered earlier through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(D). Therefore, the Court applies Section 2244(d)(1)(A).

Under Section 2244(d)(1)(A), a prisoner has "one year to file a federal petition for habeas corpus relief," starting from the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). "[T]he expiration of the time for seeking [direct] review," 28 U.S.C. § 2244(d)(1)(A), is measured from the date "when the time for seeking further direct review in the state court expires[,]" *Erickson v. Davis*, 895 F.3d 372, 374 (5th Cir. 2018) (quoting *Roberts*, 319 F.3d at 394). Thus, if a defendant fails to directly appeal to the state's highest court from the intermediate appellate court, his direct appeal expires when the time to appeal, or file a petition for a writ of *certiorari*, to that court expires. *Gonzalez v. Thaler*, 565 U.S. 134, 150, 132 S.Ct. 641, 181 L.Ed.2d 619 (2012).

Here, Williams did not seek a rehearing with the Mississippi Court of Appeals or petition the Mississippi Supreme Court for a writ of *certiorari*. For purposes of Section 2244(d)(1)(A), therefore, Williams' conviction became final on April 30, 2019, or fourteen days after the Mississippi Court of Appeals entered its decision denying Williams' appeal. M.R.A.P. 17(b).[8]

---

[8] *See also Camacho v. Hobbs*, 774 F.3d 931, 935 (8th Cir. 2015); *Copple v. Turner*, No. 1:18–CV–89–GHD–DAS, 2018 WL 3868787, at *1 (N.D. Miss. Aug. 14, 2018); *Tanner v. King*, No. 1:13–CV–232–LG–JMR, 2014 WL 1094872, at *3 (S.D. Miss. Mar. 19, 2014).

The Court turns to whether Williams is entitled to tolling of his one-year limitation period.

## B. Statutory Tolling

Under Section 2244(d)(2), a petitioner is entitled to statutory tolling for the period that his "properly filed" PCR motion is "pending." 28 U.S.C. § 2244(d)(2). A PCR application is "properly filed" when "its delivery and acceptance are in compliance with the applicable laws and rules governing filings[,]" *Leonard v. Deville*, 960 F.3d 164, 168 (5th Cir. 2020) (quoting *Larry v. Dretke*, 361 F.3d 890, 893 (5th Cir. 2004)), including but not limited to timing requirements related to filing, *Allen v. Siebert*, 552 U.S. 3, 6, 128 S.Ct. 2, 169 L.Ed.2d 329 (2007). Furthermore, an application is "pending" so long as the ordinary state collateral review process is "in continuance." *Carey v. Saffold*, 536 U.S. 214, 219–20, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002). That is, "until the completion of" the PCR process. *Id.* at 220, 122 S.Ct. 2134. Finally, a petitioner is not entitled to statutory tolling if he files his state PCR application *after* the one-year limitations period expires because, at that point, there is no longer a deadline to toll. See *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000). *See also Fairley v. Kent*, No. 18–31193, 2019 WL 12374114, at *1 (5th Cir. July 3, 2019), *cert. denied*, ––– U.S. –––, 140 S.Ct. 882, 205 L.Ed.2d 488 (2020).

Here, the Court begins by discussing whether Williams' PCR applications filed prior to the conclusion of his direct appeal were "properly filed." *Leonard*, 960 F.3d at 168. Turning to Mississippi law, a state court defendant cannot file a PCR application until he concludes his direct appeal. Miss. Code. Ann. § 99–39–5(2); *Walker v. State*, 555 So.2d 738, 741 (Miss. 1990). Therefore, a premature PCR application—that is, a PCR application that is filed before such application is timely—is not filed in compliance with Mississippi's "applicable laws and rules." *See, e.g.*, *Mohammed-Blaize v. I.N.S.*, 133 F. App'x 774, 774 (2d Cir. 2005). In line with this law,

six of Williams' seven premature PCR applications were expressly dismissed as untimely. Doc. [13], Ex. 10–12.

Nevertheless, the Mississippi Supreme Court did not comment on why it dismissed Williams' seventh PCR application. Doc. [12], Ex. 19. Typically, a reviewing court can "look through" the Mississippi Supreme Court's decision to the last reasoned opinion on point. *Evans v. Chavis*, 546 U.S. 189, 126 S.Ct. 846, 163 L.Ed.2d 684 (2006). However, the Mississippi Supreme Court was the first and last state court to address Williams' application. Doc. [12], Ex. 19. As such, there is no reasoned opinion to "look through" and review. *Evans*, 546 U.S. at 198, 126 S.Ct. 846. Nevertheless, "if a state court fails to rule clearly on the timeliness of an application, a federal court 'must . . . determine what the state courts would have held in respect to timeliness.'" *Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 85–86 (3d Cir. 2013) (quoting *Evans*, 546 U.S. at 198, 126 S.Ct. 846). Since the Mississippi Supreme Court denied Williams' seventh application roughly two months before Williams' direct appeal concluded, Doc. [12], Ex. 19, the seventh PCR application was unambiguously premature—and, by extent, untimely under Mississippi law, *Walker*, 555 So.2d at 741. Therefore, the Court concludes that the Mississippi Supreme Court would have ruled that Williams' seventh PCR application was untimely. *Jenkins*, 705 F.3d at 85–86.

Ultimately, as Williams' seven premature PCR applications were denied as untimely, Doc. [13], Ex. 10–12, and time-related filing requirements constitute "applicable laws and rules[,]" *Allen*, 552 U.S. at 6, 128 S.Ct. 2, those PCR applications do not entitle Williams to statutory tolling of his one-year limitations period.

Next, the Court considers the PCR application that Williams filed after his conviction became final on direct appeal. *See* Doc. [13], Ex 11, at 4–33. As described above, Williams' one-year

9

limitations period ended on April 30, 2020, but he did not file his PCR application until June 16, 2020. *Ibid.* Since Williams' limitations period concluded months before he filed his PCR application, Williams is not entitled to statutory tolling related to that application, either. *Scott*, 227 F.3d at 263.

Finally, the Court considers whether Williams' other filings constitute an "application for State post-conviction or other collateral review" within the meaning of Section 2244(d)(2). *See* 28 U.S.C. § 2244(d)(2). Under Fifth Circuit precedent, the Court asks whether Williams "sought 'review' of the judgment pursuant to which he is incarcerated [in these filings,]" *Moore v. Cain*, 298 F.3d 361, 367 (5th Cir. 2002), that falls outside of the "direct review process[,]" *Wall v. Kholi*, 562 U.S. 545, 560, 131 S.Ct. 1278, 179 L.Ed.2d 252 (2011). Having reviewed Williams' other filings, including his "motion for postconviction bail," "memorandum" (construed as a motion for records), and "proposed corrections to the record," the Court concludes that these filings do not constitute "properly filed application[s] *for State post-conviction or other collateral review* with respect to the pertinent judgment or claim" presently before the Court, 28 U.S.C. § 2244(d)(2) (emphasis added), and, indeed, fell within the direct review process, *Hutson v. Quarterman*, 508 F.3d 236, 239 (5th Cir. 2007). *See also* Doc. [12], Ex. 17–18, 20–22.

Notwithstanding the above, Williams attempts to argue that his federal habeas petition was actually filed in a timely manner because his eighth PCR application was denied on August 20, 2020. Doc. [14], at 2. Williams relies on Section 2254(b)(1)(A) to support his argument. *Ibid.* However, Section 2254(b)(1)(A) does not address the start date for the AEDPA limitations period, but rather the exhaustion of state court remedies. Instead, Section 2244(d) addresses filing deadlines. *Roberts*, 319 F.3d at 692. For this reason, this argument fails.

### C. Equitable Tolling

In addition to statutory tolling, a petitioner may be entitled to equitable tolling. To be entitled to equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing.'" *Holland v. Florida*, 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (quotation omitted). "Equitable tolling is 'a discretionary doctrine that turns on the facts and circumstances of a particular case.'" *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999). The burden of proof rests with the petitioner, *Clarke v. Rader*, 721 F.3d 339, 344 (5th Cir. 2013), who must meet both prongs, *Manning v. Epps*, 688 F.3d 177, 185 n.2 (5th Cir. 2012).

The Court begins with the "extraordinary circumstances" prong. As the term "extraordinary" suggests, this prong will only "rarely" be met. *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009) (per curiam). By extent, "garden variety claim[s] of excusable neglect, such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling[.]" *Holland*, 560 U.S. at 649, 130 S.Ct. 2549. Furthermore, filing delays must flow from external factors beyond the petitioner's control, *Jackson v. Davis*, 933 F.3d 408, 410 (5th Cir. 2019), and, even then, the measure is "*how severely* those [external] impediments limited the petitioner's ability to timely file[,]" *Jimenez v. Hunter*, 741 F. App'x 189, 193 (5th Cir. 2018) (emphasis added) (citations omitted). After all, "equity is not intended for those who sleep on their rights." *Manning*, 688 F.3d at 183 (quoting *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006)). Finally, "ignorance of the law is [not] sufficient to justify equitable tolling." *Johnson v. Quarterman*, 483 F.3d 278, 286 (5th Cir. 2007) (quotation omitted).

Turning to the diligence prong, the petitioner must demonstrate "reasonable diligence [in pursuing his rights], not maximum feasible diligence." *Jackson*, 933 F.3d at 411 (quoting *Holland*,

560 U.S. at 653, 130 S.Ct. 2549). There is no temporal cut-off for diligence, *id.* at 413, but "'delays of the petitioner's own making do not qualify' for equitable tolling[,]" *Clarke*, 721 F.3d at 344.

Here, Williams has failed to meet either prong of the equitable tolling analysis. The Court begins with the extraordinary circumstances prong. First, Williams fails to identify extraordinary circumstances entitling him to equitable tolling. *See* Doc. [14, 16, 27]. Liberally construing Williams' second unauthorized sur-reply, in which he argues that his due process rights have been violated, the Court understands Williams to be arguing that the illegality of his sentence constitutes an extraordinary circumstance. Doc. [27]. However, the argument that one's sentence is illegal is a merits argument that goes to the heart of habeas review, it is not an "extraordinary circumstance" for equitable tolling purposes. *See*, *e.g.*, *Williams v. Mississippi*, No. 3:17–CV–118–NBB–DAS, 2018 WL 312870, at *3 (N.D. Miss. Jan. 5, 2018) (collecting cases). Williams fails to identify any other extraordinary circumstances. *See* Doc. [14, 16, 27]. For these reasons, Williams is not entitled to equitable tolling. *Manning*, 688 F.3d at 185 n.2.

Alternatively, turning to the due diligence prong, Williams argues that (i) his frequent state court filings; (ii) "numerous exhibits" filed before this Court; and (iii) the fact that he did not request additional time when pursuing his direct appeal "unlike the State" illustrate his exercise of due diligence. Doc. [16], at 3, 6–7, Ex. 5–13. Williams' arguments are without merit. To begin with, the mere fact that Williams submitted numerous filings in *state* court is not evidence that he has *diligently* pursued his rights in *federal* court. This argument fails to explain his decision to wait for more than a year to file his federal habeas petition. Turning to his second argument, the mere fact that Williams attached twenty-six exhibits to his habeas petition, which are all court rulings made throughout his state court litigation, similarly fails to explain why he waited more than a year to file his federal habeas petition. Doc. [1], Ex. 1. Finally, the State's requests for additional

time to file their state-court appellate brief has no bearing on whether Williams diligently pursued his rights in federal court. *See, e.g.*, *Holland*, 560 U.S. at 653, 130 S.Ct. 2549 (holding that diligence prong focuses on *petitioner's* diligence in pursuing his rights).

For these reasons, Williams is not entitled to equitable tolling.

### D. Fundamental Miscarriage of Justice Exception

The Court turns to the "fundamental miscarriage of justice," or, "actual innocence," exception. *See McQuiggin v. Perkins*, 569 U.S. 383, 391–92, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013). Actual innocence refers to factual, not legal, innocence. *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). An actual innocence claim is only established when the petitioner shows that, in light of newly-discovered evidence, "it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Newly-discovered evidence must be reliable—"whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." *Id.* at 324, 115 S.Ct. 851. This newly-discovered evidence need not, however, necessarily be admissible at a trial. *House v. Bell*, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). Ultimately, the category of cases reached by the actual innocence exception is "severely confined," *McQuiggin*, 569 U.S. at 394–95, 133 S.Ct. 1924, but a finding does not require "absolute certainty[,]" *House*, 547 U.S. at 538, 126 S.Ct. 2064.

Williams places heavy emphasis on the actual innocence exception in his resistance to the respondent's motion to dismiss. Doc. [14, 16, 27]. According to Williams, he was misidentified as the perpetrator of the crime. *Ibid.* He identifies several pieces of evidence that, he says, support a finding of actual innocence, including (i) "the actual oral recorded [sic] as authenticity," which demonstrated the correct spelling of his middle name, as opposed to the "erred written

13

documentation" by the court stenographer; (ii) the "admissible exhibit #26[,] [t]he Tennessee Identification Card" that corresponds with the "actual oral recorded record;" (iii) a "substantial question" asked to Williams on redirect examination; and (iv) the State's failure to asked the court stenographer to clarify the spelling of his middle name for the record. Doc. [14], at 2–3, 5–6; [16], at 6; [27].

Turning to the question of factual innocence, Williams is not entitled to an exception to the time bar for two overarching reasons. First, and foremost, Williams was required to present the Court with *newly*-discovered evidence, *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, not his identification card and testimony, which were presented to the jury at his trial, Doc. [14, 16]. Indeed, Williams' trial transcript, even one with a scrivener's error, is not newly-discovered evidence but simply a reproduction of the oral proceedings at trial. *See*, *e.g.*, *Castaneda v. Stephens*, No. 3:13–CV–80–M, 2013 WL 5366059, at *3 (N.D. Tex. Sept. 25, 2013).[9] Since Williams has only set forth already-existing evidence that was presented at his trial, he has failed to meet his threshold burden. The actual innocence exception is not applicable in the present case.

Even assuming *arguendo* that the evidence that Williams identified was "newly discovered," Williams' argument that the State convicted the wrong man because his name is "Merlin LKent Williams," not "Merlin Kent Williams," is also meritless. First, Myles identified Williams by physical appearance in a photo lineup and later at trial. Doc. [13], Ex. 3 (Myles T. 114:22–115:22). Since she knew Williams intimately for around four years and was facing Williams at times when he stabbed her, Myles was certainly in a great position to identify Williams as her attacker. *Id.*, Ex. 3, (Myles T. 107:18–26, 108:15–26). Furthermore, Williams conceded that his identification card was found in Myles' bedroom shortly after the stabbing. *Id.*, Ex. 4 (Williams T. 171:9–172:2); Ex.

---

[9] *See also Rinaldi v. Sniezek*, 302 F. App'x 125, 125 (3rd Cir. 2008); *Smith v. United States*, No. 6:10–CR–133(4), 2016 WL 1103948, at *2 (E.D. Tex. Mar. 22, 2016).

7, at 47–48. Finally, Myles was covered in blood upon his arrest, which was the same day as the stabbing. *Id.*, Ex. 3 (Birmingham T. 141:13–142:18). In light of the above, Williams has fallen well short of demonstrating that the State's mere exclusion of the letter "L" from his middle name in referencing him prior to trial and a scrivener's error in the trial transcript constituting an misidentification making it "more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt.'" *Floyd*, 894 F.3d at 154–55 (quotation omitted). For these reasons, Williams is also not entitled to relief under the actual innocence exception.

### V.     Conclusion

Since neither tolling nor the actual innocence exception apply, the last date that Williams could file a federal habeas petition was April 30, 2020. 28 U.S.C. § 2244(d)(1)(A). Since he filed the present habeas petition on September 1, 2020, his petition is untimely and, therefore, should be dismissed as time-barred. 28 U.S.C. § 2244(d).

### RECOMMENDATION

Based on the foregoing, the undersigned recommends that respondent Burl Cain's motion to dismiss is granted.

### NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation

contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

**SO ORDERED AND ADJUDGED**, this the 23rd day of July 2021.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE